<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| IDT DOMESTIC TELECOM, INC., | : : : | **Civil Action No. 22-1947 (SRC)** |
| Plaintiff, | : : | |
| v. | : : : | **OPINION** |
| ROBERT CRUMPLER, | : : : | |
| Defendant. | : : : | |

**<u>CHESLER</u>**, District Judge

This matter comes before the Court on a motion to dismiss filed by Defendant Robert Crumpler ("Crumpler" or "Defendant"). Plaintiff IDT Domestic Telecom, Inc. ("IDT" or "Plaintiff") opposes the motion. The Court, having considered the papers filed by the parties, proceeds to rule on the motions without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons that follow, the motion is denied in part and granted in part.

**I. Background**

IDT owns a series of mobile phone applications that provide various services to users, such as telephone calls and money transfers. (Am. Compl. ¶ 9). IDT alleges it entered into a series of contracts with Altrooz, a California mobile advertising agency, to coordinate mobile advertising campaigns for its applications. Crumpler allegedly was the founder, CEO, and controlling director of Altrooz, and he allegedly made Altrooz's significant business decisions. (Am. Compl. ¶ 4-5).

As asserted in the Amended Complaint, there are four levels of business entities in the mobile advertising industry. An "advertiser" will contract with a "mobile advertising agency" to

coordinate advertising placements. The agency will accomplish this through companies called "networks," which buy up advertising spaces from the owners of mobile websites and applications, called "publishers." These networks often act at the direction of a mobile advertising agency. (Am. Compl. ¶ 12-16).

According to the Amended Complaint, the IDT-Altrooz contracts only required IDT to pay Altrooz when a user clicked on an IDT advertisement and then installed an IDT application or purchased an IDT service. IDT was not required to pay Altrooz for individual advertising placements or clicks. Nor was IDT required to pay Altrooz for installations that were not attributable to Altrooz's advertising placements, called "organic" installations. IDT contracted with a mobile analytics platform called Kochava, Inc. ("Kochava") to track which installations were generated by clicks on Altrooz's advertising placements. (Am. Compl. ¶ 17-19).

This payment methodology, however, can be used to commit fraud. Networks or publishers can engage in "click flooding" by using tools to generate large numbers of fake clicks associated with random, but real devices. A small percentage of these fake clicks will, by chance, correspond to the devices of users who organically installed one of IDT's applications. This will make an organic installation appear as if it were generated by an advertising placement. This scheme, called "attribution fraud," has a tell-tale sign: the fake clicks lead to an exceedingly high click-to-installation ratio because most fake clicks are not associated with a device installing the relevant application. (Am. Compl. ¶ 21-31).

IDT alleges Altrooz's campaign, under the direction of Crumpler, was infected by high levels of attribution fraud. Altrooz allegedly chose which networks and publishers would display IDT advertisements. IDT alleges a significant number of those publishers had click-to-installation

2

ratios greater than 100 to 1. This would increase the compensation IDT would owe Altrooz without actually increasing the installation of IDT applications. IDT alleges it paid Altrooz more than $5 million for organic installations that were falsely attributed to Altrooz's publishers. (Am. Compl. ¶ 35-40).

The Amended Complaint alleges Crumpler is liable because he knowingly sent IDT invoices infected with significant amounts of attribution fraud. It alleges over a three-year period, Crumpler personally sent dozens of invoices to IDT's accounts payable department located in Newark, New Jersey, demanding payment for a significant number of fraudulently attributed installations. IDT alleges Crumpler was aware of the presence of attribution fraud in many of the entries on these invoices. (Am. Compl. ¶ 52-58). It asserts Crumpler "was constantly looking at the [installations] being attributed to Altrooz as part of Altrooz's optimization process," and therefore, he would have been aware many of the entries in these invoices were infected by fraud. (Am. Compl. ¶ 43).

IDT alleges that, as part of this fraudulent scheme, neither Crumpler nor Altrooz disclosed the identity of their publishers to IDT. The invoices allegedly did not identify individual publishers. Furthermore, IDT alleges Crumpler "entered into a secret agreement with Mella—an advertising agency located in Summit, New Jersey—which permitted Crumpler to conceal his fraud from IDT" by hiding the identities of Crumpler's publishers. (Am. Compl. ¶ 67-68).

IDT initiated this action on April 5, 2022. IDT names only Crumpler as a defendant.[1] The initial Complaint and Amended Complaint both assert (1) fraudulent concealment and

---

[1] The Amended Complaint alleges "Altrooz intimated that its operations were 'winding down' and that its revenues were 'plummeting'". (Am. Compl. ¶ 50).

3

misrepresentation, (2) fraudulent inducement, (3) conversion, and (4) negligence or gross negligence. Both complaints also assert the Court should pierce the corporate veil and recognize Altrooz as the alter ego of Crumpler. They both claim relief that includes punitive damages and attorney's fees.

This Court dismissed IDT's initial Complaint without prejudice for lack of personal jurisdiction, failure to satisfy Rule 9(b), and failure to state a claim. (ECF No. 15). IDT filed the instant Amended Complaint on October 12, 2022. (ECF No. 20). The Amended Complaint added various allegations concerning Crumpler's individual activity, primarily around sending the invoices and his "secret agreement" with Mella. Crumpler now moves to dismiss the Amended Complaint. Crumpler argues IDT (1) has failed to establish personal jurisdiction, (2) has failed to assert a viable veil-piercing theory, (3) has failed to allege fraud with adequate specificity, (4) has failed to state a claim for conversion, (5) has failed to state a claim for negligence or gross negligence, and (6) cannot claim punitive damages and attorney's fees. (ECF No. 20). IDT has conceded that it cannot state a claim for negligence, but it opposes Crumpler's arguments relating to personal jurisdiction, veil-piercing, fraud, and punitive damages. (ECF No. 24).

**II.     Discussion**

   a. <u>Legal Standard</u>

Crumpler moves to dismiss IDT's Amended Complaint under Rule 12(b)(2) for "lack of personal jurisdiction" and Rule 12(b)(6) for a "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(2), (6).

"The burden of demonstrating the facts that establish personal jurisdiction falls on the plaintiff, and once a defendant has raised a jurisdictional defense, the plaintiff must prove by

4

affidavits or other competent evidence that jurisdiction is proper." Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009).  When, as here, the Court has not held an evidentiary hearing concerning personal jurisdiction, a plaintiff need only establish a prima facie case of personal jurisdiction, and the Court shall "accept the plaintiff's allegations as true, [construing] disputed facts in favor of the plaintiff." Id.

Defendants also move to dismiss Plaintiff's Amended Complaint under Rule 12(b)(6) for a "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  Rule 8(a)(2) provides a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Id. 8(a)(2).  A complaint will survive a motion under Rule 12(b)(6) only if it states "sufficient factual allegations, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556.)  While the Court must accept all factual allegations as true and construe a complaint in the light most favorable to the plaintiff, it need not accept a "legal conclusion couched as a factual allegation." Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, will not suffice." Iqbal, 556 U.S. at 678.

Additionally, Rule 9(b) imposes a heightened pleading standard for Plaintiff's fraud claims. It provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed R. Civ. P. 9(b).  "This requirement is intended 'to place the

5

defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior.'" In re Riddell Concussion Reduction Litig., 77 F. Supp. 3d 422, 430 (D.N.J. 2015) (quoting Seville Mach. Indus. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984)).

    b. Personal Jurisdiction

Crumpler asserts this Court lacks personal jurisdiction. IDT disagrees, asserting the Court has specific jurisdiction, principally under the Calder v. Jones effects test. Calder v. Jones, 465 U.S. 783 (1984).

This Court, sitting in diversity, "may assert personal jurisdiction over a nonresident defendant to the extent allowed under the law of the forum state." Metcalfe, 566 F.3d at 330. New Jersey's long arm-statute, N.J. Ct. R. 4:4-4, authorizes personal jurisdiction "as far as is permitted by the Fourteenth Amendment to the United States Constitution." Decker v. Circus Circus Hotel, 49 F. Supp. 2d 743, 745 (D.N.J. 1999), accord Avdel Corp. v. Mecure, 58 N.J. 264, 268 (1971). The Fourteenth Amendment's due process clause "limits the power of a state court to render a valid personal judgment against a nonresident defendant" depending on "the defendant's relationship to the forum state." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980); Bristol-Myers Squibb Co. v. Superior Court, 582 U.S. ---, 137 S. Ct. 1773, 1779 (2017).

The Supreme Court has recognized two types of personal jurisdiction, general jurisdiction and specific jurisdiction, which are distinct based on the nature and extent of the defendant's contacts with the forum. General jurisdiction applies when the defendant's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum state." Goodyear Dunlop Tires Operations., S.A. v. Brown, 564 U.S. 915, 919 (2011) (quoting Int'l Shoe

Co. v. Washington, 326 U.S. 310, 317 (1945)).  Where general jurisdiction exists, the defendant's contacts with the state need not be related to the litigation, and, indeed, the forum court "may hear any claim against that defendant, even if all the incidents underlying the claim occurred in a different state."  Bristol-Myers Squibb, 137 S. Ct. at 1780 (citing Goodyear, 564 U.S. at 919).

Specific jurisdiction, in contrast, exists where the litigation arises out of or relates to the defendant's contacts with the forum.  Id.  This means that "there must be 'an affiliation between the forum and the underlying controversy, principally [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'"  Id. (quoting Goodyear, 564 U.S. at 919) (alteration in original).  The Third Circuit provides a three-part test to determine whether specific jurisdiction exists.  First, "the defendant must have 'purposefully directed its activities' at the forum."  O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 317 (3d Cir. 2007) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)).  Second, "the litigation must 'arise out of or relate to' at least one of those activities."[2]  Id. (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984)).  Third, a court must consider "whether the exercise of jurisdiction otherwise 'comports with fair play and substantial justice.'"  Id. (citing Burger King, 471 U.S. at 476).

If an intentional torts case does not meet this traditional test for specific jurisdiction, the Calder v. Jones effects test provides an alternative theory of jurisdiction.  Calder v. Jones, 465 U.S. 783 (1984).  Under this test, a court may exercise personal jurisdiction over a non-resident defendant when the plaintiff demonstrates "(1) the defendant committed an intentional tort; (2) the

---

[2] Accordingly, where a court has specific jurisdiction, its authority is limited to adjudicating issues related to the very controversy on which that jurisdiction is based.  Bristol-Myers Squibb, 137 S. Ct. at 1780.

7

forum state is the focal point of the harm suffered by plaintiff; and (3) the forum state is the focal point of the defendant's tortious activity, because the defendant expressly aimed its tortious conduct there." Marten v. Godwin, 499 F.3d 290, 297 (3d Cir. 2007).

It is clear this Court does not have general jurisdiction over Crumpler. Crumpler is a citizen of California. It appears his business affairs centered around California. Crumpler asserts he never "travel[ed] to New Jersey in connection with [his] relationship with IDT." (Def. Br. at 11). Nor does IDT assert Crumpler had significant contact with New Jersey outside of his relationship with IDT. In total, Crumpler's contacts with New Jersey are not so "systematic and continuous" that he can be considered "essentially at home" in New Jersey. Goodyear, 564 U.S. at 919 (quoting Int'l Shoe Co., 326 U.S. at 317). Thus, the Court does not have general jurisdiction over Crumpler.

The facts in IDT's Amended Complaint establish specific jurisdiction over Crumpler under the traditional test. First, Crumpler has "purposefully directed" his activities at New Jersey by allegedly sending fraudulent invoices to the IDT accounts payable department located in Newark, New Jersey. Crumpler knew or should have known this office was located in New Jersey, because at least some of the invoices included IDT's address in Newark, New Jersey. (ECF No. 24-2). Second, this lawsuit arises out of Crumpler's allegedly fraudulent invoices. IDT's liability theory against Crumpler is that he is personally liable for fraud because he sent IDT invoices knowing many of the charges came from falsely attributed clicks. The lawsuit, therefore, arises out of Crumpler's contacts with New Jersey. Third, the exercise of jurisdiction "comports with fair play and substantial justice." Crumpler managed a relationship with a New Jersey business for several years. When that business alleges Crumpler engaged in fraud, he should expect he may need to defend that case in New Jersey.

Crumpler's primary argument against specific jurisdiction is that his personal contacts with IDT were performed in his corporate capacity. However, individuals are ultimately responsible for their personal actions, regardless of whether those actions are on behalf of a corporation. See Grow Farms Corp. v. Nat'l State Bank, Elizabeth, 167 N.J. Super. 102, 109 (App. Div. 1979) ("Any corporate entity or individual is responsible for its torts unless otherwise exempt by law."). Accordingly, the action of sending the invoices is attributable to Crumpler personally. Crumpler also asserts that sending the invoices was not sufficient to establish jurisdiction. However, a single contact is sufficient to establish jurisdiction, and Crumpler is alleged to have sent invoices over the course of several years. Columbia Metal Culvert Co., Inc. v. Kaiser Indus. Corp., 526 F.2d 724, 729 (3d Cir. 1975). Furthermore, it is not necessary for Crumpler to have physically visited the state of New Jersey in the course of his business dealings with IDT. Electronic communications may be the basis for establishing personal jurisdiction when, as here, they are a purposeful contact with the forum state. Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 455 (3d Cir. 2003). Finally, Crumpler argues there is no jurisdiction because "there is no evidence that [he] did anything fraudulent." (Def. Reply Br. at 4). This, however, is a merits argument that has no bearing on the existence of personal jurisdiction.

Because IDT has established personal jurisdiction exists under the traditional specific jurisdiction framework, the Court will not consider whether jurisdiction exists under the Calder v. Jones effects test.

    c. Piercing the Corporate Veil

Before considering IDT's individual claims, the Court will address "piercing the corporate veil," a legal theory which IDT asserts provides an alternative method of finding Crumpler liable

9

for several of its claims.  Crumpler asserts IDT has not alleged facts allowing it to present claims that rely on piercing the corporate veil.  IDT disagrees and argues it has pled facts that, if true, create a plausible inference that Altrooz was Crumpler's alter ego.

This Court, sitting in diversity, must apply substantive state law on piercing the corporate veil.  See Craig v. Lake Asbestos of Quebec, Ltd., 843 F.2d 145, 149 (3d Cir. 1988).  Under New Jersey law, it is a "fundamental proposition[] that a corporation is a separate entity from its shareholders, and that a primary reason for incorporation is the insulation of shareholders from the liability of the corporate enterprise." State, Dep't of Envtl. Prot. v. Ventron Corp., 94 N.J. 473, 500 (1983) (citation omitted).  However, in limited cases, when a corporation is used as an alter ego for stockholders engaging in "fraud, injustice, or the like," courts may hold those shareholders accountable for the liabilities of the corporation.  Id.  "The limitations placed on a claimant's ability to reach behind a corporate structure are intentional, as '[t]he purpose of the doctrine of piercing the corporate veil is to prevent an independent corporation from being used to defeat the ends of justice, to perpetrate fraud, to accomplish a crime, or otherwise to evade the law[.]'" Richard A. Pulaski Const. Co., Inc. v. Air Frame Hangars, Inc., 195 N.J. 457, 472 (2008) (quoting Ventron Corp., 94 N.J. at 500) (alterations in original).  The party seeking to pierce the corporate veil bears the burden of showing the court should disregard the corporate form.  Id.

In considering Crumpler's prior motion to dismiss, this Court did not reach the issue of veil-piercing because the Court did not perceive how veil-piercing related to IDT's claims, which were based "on the theory that Crumpler personally engaged in tortious conduct directed at IDT, and . . . that he should be held personally liable for the tortious conduct he directed at IDT." IDT Domestic Telecom, Inc. v. Crumpler, No. 22-1947, 2022 WL 3716935 (D.N.J. Aug. 29, 2022).

10

That remains true here.  The fraud claims each depend on Crumpler personally engaging in actions that defrauded IDT of money.  The conversion claim is also based on Crumpler dispossessing IDT's assets through fraud.[3]  At no point does the Amended Complaint allege Altrooz engaged in tortious acts without the personal involvement of Crumpler.  IDT's claims do not rely on a veil-piercing theory, so the Court will not consider it in evaluating Crumpler's motion to dismiss IDT's claims.

      d.  Counts I & II: Fraud Claims

IDT alleges two counts of fraud.  Count I alleges fraudulent concealment and misrepresentation.  Count II alleges fraudulent inducement.  Crumpler asserts that these claims fail to meet the particularity requirement of Rule 9(b).  Crumpler notes the initial Complaint did not satisfy this requirement and argues the new facts alleged in the Amended Complaint—that Crumpler personally sent the invoices and that he entered into a secret agreement with Mella—do not add the necessary specificity to maintain the claim.  Substantively, Crumpler asserts IDT has failed to state the fraud claims against him individually because he performed all actions in his corporate capacity.  IDT asserts the Amended Complaint alleges the fraud claims with sufficient specificity and rejects Crumpler's distinction between actions performed in a corporate versus an individual capacity.

This Court sitting in diversity must apply the substantive law of New Jersey.  Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).  Although IDT's claims all derive from common law fraud, fraudulent concealment is distinct from fraudulent misrepresentation and fraudulent inducement.  The elements of fraudulent concealment are "(1) a duty on behalf of the defendant to disclose to

---

[3] As discussed below, the negligence and gross negligence claims have been voluntarily dismissed.

11

the plaintiff a material fact; (2) the failure to disclose that fact; (3) an intention to defraud or deceive the plaintiff; (4) action taken by the plaintiff in justifiable reliance on the concealment; and (5) damages as a result of the defendant's concealment." In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices, and Prods. Liab. Litig., 553 F. Supp. 3d 211, 230-31 (D.N.J. 2021) (citing Arcand v. Brother Int'l Corp., 673 F. Supp. 2d 282, 305 (D.N.J. 2009)). On the other hand, fraudulent misrepresentation and fraudulent inducement require showing "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." Banco Popular N. Am. v. Gandi, 184 N.J. 161, 172-73 (2005).

The Rule 9(b) particularity requirement applies to each of IDT's fraud claims. Fed R. Civ. P. 9(b). To meet this requirement "a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the "precise misconduct with which [it is] charged." Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2004) (quoting Lum v. Bank of America, 361 F.3d 217, 223-224 (3d Cir. 2004)). A "plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." Id.; see also United States ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC, 812 F.3d 294, 307 (3d Cir. 2016) (explaining Rule 9(b) requires a complaint alleging fraud to provide "the who, what, when, where and how of the events at issue").

IDT has not adequately pled a claim of fraudulent concealment. Principally, it has failed to allege Crumpler personally had an affirmative duty to disclose its publishers or the existence of

12

attribution fraud to IDT. Such a duty would have required Crumpler to disclose information regardless of whether he sent invoices or other communications to IDT. Such a duty is unlikely to have existed because Crumpler did not personally have a relationship with IDT that would have given rise to a duty to disclose. While Crumpler was a director and officer of Altrooz, and Altrooz contracted with IDT, there are no allegations of a contractual, fiduciary, or other relationship between IDT and Crumpler personally.[4] IDT's allegation of a secret agreement between Crumpler and Mella to not disclose the names of Altrooz's publishers does not impact the availability of a fraudulent concealment claim. Such an agreement would not impose a duty on Crumpler to disclose information to IDT. Furthermore, IDT's allegations of this secret meeting contain little detail. The Amended Complaint does not explain Mella's relationship to the parties, the details of the agreement, or the need for the agreement in the first place. Therefore, even if these allegations could support a theory of fraudulent concealment, they would be insufficient to meet the Rule 9(b) particularity requirement. Frederico, 507 F.3d at 200.

On the other hand, IDT has alleged facts that, if true, satisfy each element of fraudulent misrepresentation and fraudulent inducement. Furthermore, these allegations include specific details that satisfy the Rule 9(b) particularity requirement. First, IDT alleges "[b]etween February 2016 and July 2019, Crumpler personally issued dozens of invoices to IDT's Accounts Payable department." (Am. Compl. ¶ 53). The representations in the invoices "were false, and Crumpler knew they were false, because . . . the vast majority of the installations Crumpler took credit for were actually accomplished by people who never interacted with an advertisement placed by his

---

[4] Nor does IDT allege a duty on the part of Altrooz that could be the basis for a veil-piercing theory.

13

team of publishers." (Am. Compl. ¶ 56). This satisfies the first element of "a material misrepresentation of a presently existing or past fact." Banco Popular, 184 N.J. at 172-73. Second, IDT alleges "Crumpler knew the representations contained in the invoices he sent were false because Crumpler supposedly was 'constantly looking at the installs' as part of the 'optimization process,'" and was aware of the "unbelievably high click-to-install ratios." (Am. Compl. ¶ 57). This satisfies the second element, that Crumpler had "knowledge or belief" that his representations were false. Banco Popular, 184 N.J. at 173. Third, IDT alleges "Crumpler intended that IDT rely on his false representations and continue paying him in the future for installations for which he could fraudulently take credit," satisfying the third element of intended reliance. (Am. Compl. ¶ 59); Banco Popular, 184 N.J. at 173. Finally, satisfying the elements of reasonable reliance and damages, IDT alleges it "reasonably relied on Crumpler's representations that he was billing IDT for installations that were actually caused by users who clicked on ads placed by Crumpler's network of publishers. In reliance on these representations, IDT suffered damages of at least $5,000,000." (Am. Compl. ¶ 65); Banco Popular, 184 N.J. at 173.[5]

These allegations satisfy the Rule 9(b) particularity requirement. The fraud theory is clear on the face of the allegations in the Amended Complaint: between February 2016 and July 2019, Crumpler emailed various invoices to IDT knowing many of the entries falsely attributed organic installations to its advertisements, increasing his compensation. These allegations adequately put

---

[5] The economic loss doctrine does not apply to these facts. IDT is not alleging a breach of contract, but rather, that the fraudulent conduct was extraneous to the contract. See Red Hawk Fire & Sec., LLC v. Siemens Indus. Inc., 449 F. Supp. 3d 449, 465 (D.N.J. 2020) ("[A] claim of fraud in the inducement of a contract may proceed alongside a breach of contract claim because the former is based on pre-contractual misrepresentations that are extrinsic to the parties' agreement.").

Crumpler on notice of IDT's claims by providing "the who, what, when, where[6] and how of the events at issue." Majestic Blue Fisheries, LLC, 812 F.3d at 307.

Crumpler again asserts that he cannot be held accountable for torts committed while acting in his corporate capacity. However, as discussed above, individuals may be held liable for their torts, including when acting on behalf of a corporation. Grow Farms Corp., 167 N.J. Super. at 109. Therefore, Crumpler's distinction of corporate versus personal actions does not defeat IDT's remaining fraud claims.

Therefore, Crumpler's motion to dismiss is granted with prejudice[7] with respect to Count I to the extent it asserts a claim of fraudulent concealment and denied with respect to Count I to the extent it asserts a claim of fraudulent misrepresentation. Crumpler's motion to dismiss is denied with respect to Count II.

  e. Count III: Conversion

Crumpler asserts IDT has failed to state a conversion claim, presenting various arguments. While IDT asserts opposition to Crumpler's motion to dismiss the conversion claim, it does not present any arguments specific to this claim. Conversion is only mentioned twice in IDT's brief, once in the introduction, and once in the conclusion, without any independent arguments why it has stated a valid conversion claim. Therefore, the Court concludes IDT has failed to adequately oppose Crumpler's motion to dismiss with respect to the conversion claim.

---

[6] The term "where" does not require IDT to allege a literal, physical location of the fraud to satisfy Rule 9(b). Rather, by alleging the fraud took place over electronic communications, IDT has adequately put Crumpler on notice of the details of its fraud theory. Majestic Blue Fisheries, LLC, 812 F.3d at 307.

[7] Crumpler's motion is granted with prejudice because IDT has now twice failed to allege facts supporting fraudulent concealment. Further amendment of the Complaint is likely futile. Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

Even if IDT had opposed the motion to dismiss the conversion claim, its asserted claim is defective. New Jersey courts often define conversion as "an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." LaPlace v. Briere, 404 N.J. Super 585, 595 (App. Div. 2009) (quoting Barco Auto Leasing Corp. v. Holt, N.J. Super. 77, 83 (App. Div. 1988)). Conversion requires a defendant to exercise "dominion and control" over another's property. Id. This may not necessarily require actual possession or apparent ownership of the property. However, it requires exercising some rights over the property in a manner that is very similar to ownership. Merely emailing an invoice to a party requesting payment to another party does not meet that level of "dominion and control."[8] Id.; see also Marketvision/Gateway Research, Inc. v. Carter, No. 10-1537, 2012 WL 762317 (D.N.J. Mar. 6, 2012). IDT's conversion claim is therefore dismissed with prejudice.[9]

### f. Count IV: Negligence Claims

Crumpler asserts IDT has failed to state a claim for negligence or gross negligence. IDT has voluntarily withdrawn these claims. Accordingly, Count IV is dismissed with prejudice.[10]

---

[8] Additionally, if Crumpler's alleged personal actions—facilitating a fraudulent transfer from one party to another—were to constitute conversion, any actor in the causal chain of a fraud could be liable for conversion. Conversion case law cannot be read that expansively. See Marketvision/Gateway Research, Inc. v. Carter, No. 10-1537, 2012 WL 762317 (D.N.J. Mar. 6, 2012).

[9] Crumpler's motion is granted with prejudice because IDT has now twice failed to allege facts supporting conversion. Further amendment of the Complaint is likely futile. Grayson, 293 F.3d at 108.

[10] This does not operate as a voluntary dismissal pursuant to Rule 41(a)(1)(A). Fed. R. Civ. P. 41(a)(1)(A). Accordingly, IDT's negligence claims are dismissed with prejudice because IDT has now twice failed to allege facts supporting negligence or gross negligence, and further amendment of the Complaint is likely futile. Grayson, 293 F.3d at 108.

### g. Punitive Damages and Attorney's Fees

Crumpler asserts the Amended Complaint provides no basis for punitive damages and attorney's fees. Crumpler argues punitive damages are not available because these facts do not satisfy the Punitive Damages Act, N.J.S.A. 2A:15-5.9 to 5.17, and because punitive damages are not available in a breach of contract case. (Def. Br. at 24). Regarding attorney's fees, Crumpler asserts New Jersey only allows attorney's fees when they are authorized by statute, court rule, or contract, none of which apply in this case. (Def. Br. 25). IDT did not address these issues in its Opposition Brief. However, in a supplemental letter to the Court, IDT asserted punitive damages should be available if its fraud claims survive Crumpler's motion to dismiss. (ECF No. 27). Therefore, the Court deems IDT to have adequately opposed the dismissal of punitive damages and to have not adequately opposed dismissal of attorney fees.[11]

Punitive damages in New Jersey are governed by the Punitive Damages Act, N.J.S.A. 2A:15-5.9 to 5.17. It provides:

> Punitive damages may be awarded to the plaintiff only if the plaintiff proves, by clear and convincing evidence, that the harm suffered was the result of the defendant's acts or omissions, and such acts or omissions were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions.

N.J.S.A. 2A:15-5.12. At the motion to dismiss stage, the inquiry is whether IDT has stated "sufficient factual allegations, accepted as true" to plausibly meet this standard. IDT's allegations, accepted as true, are sufficient to conclude this standard plausibly may be met. Principally, IDT

---

[11] Crumpler is correct that New Jersey law does not allow for attorney's fees unless they are allowed by statute, court rule, contract terms, and equitable principles. Occhifinto v. Olivo Const. Co., LLC, 221 N.J. 443, 449 n.2 (2015). IDT has not presented the Court with any authority to provide the basis for fees.

17

has alleged that Crumpler falsely claimed Altrooz generated a significant number of installations. It alleges Crumpler knowingly sent false information to increase Altrooz's compensation at the expense of IDT. Those facts, accepted as true, are sufficient to conclude it is plausible Crumpler caused harm to IDT actuated by his wanton and willful disregard of IDT and its financial interests.

Additionally, Crumpler asserts punitive damages are not available in a breach of contract case. This is not a breach of contract case. IDT does not bring a claim for breach of contract and the crux of IDT's allegations is that Crumpler engaged in fraud. The existence of a contract in the matter does not turn it into a breach of contract case.

Accordingly, punitive damages are available to IDT if it succeeds on its fraud claims. Attorney's fees will not be available to IDT.

### III.    Conclusion

For the foregoing reasons, the Court will deny Defendant's motion in part and grant Defendant's motion in part. Defendant's 12(b)(2) motion is denied. Defendant's 12(b)(6) motion with respect to Count I is granted with prejudice to the extent it asserts a claim of fraudulent concealment and denied to the extent it asserts a claim of fraudulent misrepresentation. Defendant's 12(b)(6) motion is denied with respect to Count II. Defendant's 12(b)(6) motion is granted with prejudice with respect to Counts III and IV. Punitive damages are available if Plaintiff succeeds on the merits. Attorney's fees are not available to Plaintiff. An appropriate order will be filed.

 s/ Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge

Dated: January 31, 2023